UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

REINALDO SANCHEZ,           )  CASE NO. C08-0530-RSM
                            )
    Plaintiff,              )
                            )
    v.                      )  REPORT AND RECOMMENDATION
                            )  RE: SOCIAL SECURITY APPEAL
MICHAEL J. ASTRUE,          )
Commissioner of Social Security, )
                            )
    Defendant.              )
_____)

Plaintiff Reinaldo Sanchez proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for benefits under Title II and Title XVI of the Social Security Act after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that the Commissioner's decision be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born in 1963[1] in Puerto Rico and immigrated with his family to Milwaukee,

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY APPEAL
PAGE -1

Wisconsin in 1989. He has a ninth grade education, and his first language is Spanish. Between 1989 and 2002 (with the single exception of 1993), plaintiff was employed either as a cleaner, fish processor, or packager.

Plaintiff received General Assistance Unemployable benefits through the State of Washington Department of Social & Health Services beginning on July 6, 2004. (AR 395.) On that same day, plaintiff filed applications for disability insurance benefits and supplemental security income, alleging disability due to depression, Post Traumatic Stress Disorder (PTSD), tongue laceration, broken jaw, and back pain beginning January 1, 2003. (AR 36.) Both claims were denied on August 31, 2004, and upon reconsideration on April 25, 2005, due to lack of evidence. (AR 36, 41-42.)

Thereafter, plaintiff filed a timely written request for a hearing on May 31, 2005. ALJ John Adams held a hearing on August 10, 2006, at which plaintiff and counsel appeared. A second hearing was held in front of ALJ Adams on January 3, 2007, at which Joseph A. Moisan, Ed.D., an impartial vocational expert, testified. On March 15, 2007, the ALJ issued a decision denying benefits. Plaintiff appealed the decision to the Appeals Council, which denied his request for review on March 15, 2007. On April 4, 2008, plaintiff filed a civil action in this Court for review of the Commissioner's final decision.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

---

official policy on privacy adopted by the Judicial Conference of the United States.

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must be determined whether the claimant is gainfully employed. The ALJ found that plaintiff met the insured status requirements and had not engaged in substantial gainful activity since January 1, 2003, the alleged onset date. (AR 24.) At step two, it must be determined whether a claimant suffers from a severe impairment(s). The ALJ determined that plaintiff had the severe impairments of depression and alcohol abuse but that the record did not support that plaintiff had medically determinable PTSD or a back impairment. (AR 24.) Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. If a claimant's impairments do not meet or equal a listing, the Commissioner must determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

Plaintiff's case was decided at step four. The burden is on the claimant to establish that he or she is unable to return to their former type of work due to a medical impairment that could reasonably be expected to produce the symptoms alleged. *Smolen v. Chater*, 80 F.3d 1273, 1281-82 (9th Cir. 1996); *accord Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990) ("The burden of establishing disability is initially on the claimant, who must prove that [he] is unable to return to [his] former type of work."); *see* 20 C.F.R. §§ 404.1512, 416.912. The adjudicator reaches a determination based on a review of a claimant's residual functioning capacity (RFC) and the physical and mental demands of the work he or she previously performed. *See* 20 C.F.R. §§

404.1520(e), 416.920(e). If the adjudicator determines the claimant has the RFC required to perform his past relevant work, the claimant is found not disabled and no step five analysis is required. *See* 20 C.F.R. § 416.961. The ALJ determined that plaintiff "was capable of performing past relevant work as a cleaner and packing line worker" and was not disabled. (AR 31-32.) Accordingly, no step five analysis was conducted.

This Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005); *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Magellanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities, *see Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995), based on specific, cogent reasons. *See Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). However, if there is more than one rational interpretation, one of which supports the ALJ's decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

Plaintiff contends that the ALJ improperly found that his subjective pain testimony was not credible and failed to utilize a vocational expert to assess his residual earning capacity. Defendant argues that the ALJ's findings were supported by substantial evidence and not contrary to the law. For the reasons described below, the Court recommends that the decision be affirmed.

<u>Mr. Sanchez's Subjective Symptom Testimony</u>

Where there is no evidence of malingering, the ALJ must provide clear and convincing

reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044,1049 (9th Cir. 2001); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). In finding a claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996). "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes ex rel. Wolfe v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003).

Whenever a claimant submits objective medical findings establishing an underlying medical or mental impairment that would normally produce a certain level of symptoms, the intensity, persistence, and functionally limiting effects of the symptoms must be evaluated to determine the extent to which the symptoms affect the individual's ability to do basic work activities. *See* 20 C.F.R. §§ 404.1529(C), 416.929(C); SSR 96-7p; *Smolen*, 80 F.3d at 1281. In evaluating the intensity and persistence of the claimant's symptoms, the adjudicator is required to make a finding about the credibility of the individual's statements. 20 C.F.R. §§ 404.1529(C)(4), 416.929(C)(4); *see* SSR 96-7p. In cases of excess pain testimony, a claimant need not produce medical evidence to support the severity of that claim. *Light v. SSA*, 119 F.3d 789, 792 (9th Cir. 1997); *accord Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir. 1991). "'Excess pain' is, by definition, pain that is unsupported by objective medical findings." *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986), *superceded by statute on other grounds as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir. 1990). Accordingly, the ALJ "may not discredit a claimant's testimony of pain and deny

disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d at 346-47); *see* SSR 96-7p. "To find the claimant not credible the ALJ must either rely on reasons unrelated to the subjective testimony, (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Light*, 119 F.3d at 792; *accord Orteza*, 50 F.3d at 750 ("Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence.").

The ALJ is permitted to consider daily living activities in his credibility analysis. "[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *accord Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990) (holding that an ALJ is to note any activities that "[m]ay be seen as inconsistent with the presence of a condition which would preclude all work activity"). In *Curry*, the Court upheld the denial of disability benefits where the claimant could "take care of her personal needs, prepare easy meals, do light housework, and shop for some groceries," because such evidence was adequate to support a conclusion that the claimant was capable of performing light work. *Id.* Elsewhere, the Ninth Circuit held that claimants should not be "penalized for attempting to lead normal lives in the face of their limitations." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). However, that conclusion was reached where claimant's efforts were "sporadic and punctuated with rest" and thus her conduct was "fully

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY APPEAL
PAGE -6

01 consistent" with her disability. *Id.; see also Fair v. Bowen,* 885 F.2d 597, 603 (9th Cir. 1989)

02 (noting that a claimant is not required to be totally disabled to be eligible for benefits and that

03 "many home activities are not easily transferable to what may be the more grueling environment

04 of the workplace, where it might be impossible to periodically rest or take medication").

05   The ALJ assessed plaintiff's credibility as follows:

> Claimant's credibility is limited. Initially, he did not answer questions at the hearings, and faked a lack of understanding. Upon further questioning, he began to open up and was very articulate. He does not appear to have any significant limitations in his ability to understand or speak English . . . . He currently has his own apartment, is sober, gets food stamps, can afford cable television, and shops at Grocery Outlet by riding the bus. At one point he was able to work on his car. He has a bus pass. He gets full medical care and is comfortable. With his current set-up, he apparently perceives no need to work. He wants to avoid street people, alcoholics, and drug users, which is very reasonable.

11 (AR 32.) Defendant avers that the ALJ properly rejected plaintiff's claims of complete disability

12 based on his activities and appearance, as well as his lack of candor about his ability to speak

13 English. (Def. Br. at 4-5.) Plaintiff contends that the ALJ lacked any evidentiary foundation for

14 finding his testimony not credible. (Pl. Br. at 3-4.) "A fair reading of the testimony shows no

15 basis whatsoever to indicate that plaintiff 'faked a lack of understanding.' Moreover, no where

16 does a fair reading of the record indicate that the plaintiff 'was very articulate.'" ( *Id.* at 4.)

17 Further, plaintiff argues that "none of the other 'reasons' advanced by the defendant to support

18 the ALJ's credibility determination are in any rational way connected to credibility." (Pl. Reply

19 Br. at 1.)

20   The ALJ offered clear and convincing reasons based on substantial evidence for finding

21 that plaintiff's symptoms were less than he alleges. The ALJ found that there were inconsistencies

22 between plaintiff's claims and his daily activities. There was no suggestion that his activities were

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY APPEAL
PAGE -7

sporadic or punctuated with a need for rest. The ALJ also found that plaintiff was disingenuous about his English language comprehension. Plaintiff, testifying without an interpreter, answered all questions put to him. *See Green v. Heckler*, 803 F.2d 528, 532 (9th Cir. 1986) (stating that ALJ's credibility determinations are entitled to great deference); *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982) ("Questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) ("We will not reverse credibility determinations of an ALJ based on contradictory or ambiguous evidence."). Accordingly, the ALJ's credibility finding should be upheld.

### Testimony of a Vocational Expert.

At step four, the inquiry is whether a claimant may perform his past relevant work. The use of a vocational expert's testimony is not required to reach this determination. SSR 82-61 states that the step four analysis only requires the testimony of a vocational expert "where available documentation and vocational resource material are not sufficient to determine how a particular job is usually performed." *See also Crane v. Shalala*, 76 F.3d 251, 255 (9th Cir. 1996) (noting that the inquiry whether a claimant may perform his past relevant work does not require the use of vocational testimony). If a claimant can do his or her previous work, the ALJ will determine that claimant is not disabled. *See* 20 C.F.R. §§ 404.1561, 416.961.

The ALJ assessed plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to do all levels of physical work. He can adequately perform the mental activities generally required by competitive, remunerative unskilled work as follows: he can understand, remember and carry out simple instructions; he can make judgements commensurate with the functions of unskilled work such as simple work-related decisions; he can respond appropriately to supervision, coworkers, and usual work situations; and he can deal with changes

in a routine work setting without contact with the general public.

(AR 25.)

The ALJ called a vocational expert to testify at step four for the limited purpose of describing plaintiff's past relevant work. The expert testified that plaintiff's past work as a cleaner was medium unskilled work; laborer/fish packer was medium semiskilled work; packager/laborer was heavy semiskilled work, and; packing line worker, was light unskilled work. (AR 32-33.) The ALJ concluded that plaintiff was capable of performing past relevant work as a cleaner and packing line worker, based on his residual functional capacity to do all physical work and the mental capacity generally required for unskilled work. (*Id.*) The ALJ therefore concluded that plaintiff was not disabled.

Defendant concurs with the ALJ's use of a vocational expert, asserting that the ALJ has the discretion whether or not to call a vocational expert at step four and is only required to call on one where there is an absence of other reliable evidence. (Def. Br. at 6.)

Plaintiff argues that when a claimant has a severe non-exertional impairment(s), an ALJ is required to take the testimony of a vocational expert to determine whether he can return to his past relevant work or his ability to perform any work. (Pl.'s Br. at 4.) Plaintiff cites *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988), in support of his contention that a vocational expert had to be called. However, that case makes clear that the testimony of a vocational expert is only required at step five, after the ALJ finds that the claimant cannot return to his former work "because of significant mental and manipulative non-exertional limitations." *Id.* at 1341.

The Court recommends that the step four determination be upheld as in accordance with law.

## CONCLUSION

For the reasons set forth above, it is recommended that the Commissioner's decision in this matter be AFFIRMED.

DATED this 2nd day of December, 2008.

Mary Alice Theiler
United States Magistrate Judge